## COLTER *et al. v.* LIVINGSTON *et al.*

1. Equity, by a writ of injunction, may restrain a threatened or existing tort, or any other act which is illegal or contrary to equity and good conscience, and for which no adequate remedy is provided at law.

2. The transferee of an execution has the right to control the same, and is entitled to an injunction to restrain another who claims to be the owner of such process under a transfer which was made by a person for a prior owner of the execution without authority from the latter, and under whom the real transferee claims title to the fi. fa., and the sheriff who has levied the same on the property of the execution debtor and is advertising the same for sale at the instance of the holder under such void transfer, from selling such property contrary to the wishes of the real owner of such process at a time when, in the opinion of such owner, the property will be sacrificed, due to financial stringency, and his security, as such execution creditor and as the holder of a junior mortgage on the same property, will be jeopardized or destroyed.

3. Under such circumstances the transferee of the fi. fa. would not have an adequate remedy at law by rule to distribute the funds arising from the sale of the property, nor by an action for damages against the sheriff and the claimant of the execution, and is entitled to an injunction to restrain the sheriff and such claimant from selling the property of the execution debtor against the wishes and to the injury of the owner of the process.

4. The fi. fa. being regular upon its face, and it being the duty of the sheriff to make the money thereon, he would not be a trespasser and liable to the plaintiffs in damages.

5. An action for damages would not afford the plaintiffs ready, adequate, and complete compensation for the injury resulting from such wrongful enforcement of the execution; and the damages resulting from such tort cannot be measured by any certain pecuniary standard.

6. Possession and actual delivery of the execution is not essential to the validity of its transfer by the plaintiff in fi. fa. or his assignee to another, where such transfer is in writing entered upon the fi. fa., with intention to pass title to the transferee.

7. The acquisition of an execution by transfer, after levy and pending advertisement of the property levied upon for sale, is not champertous.

8. Under conflicting evidence as to the ownership of the execution, the chancellor did not err in granting a temporary injunction.

No. 3092. OCTOBER 11, 1922.

Injunction. Before Judge Kent. Laurens superior court. January 14, 1922.

H. M. Livingston, W. M. Herndon, B. F. Harden, and J. T. Fountain filed their petition for injunction against W. J. Colter and J. I. Maddox, the sheriff of the city court of Dublin, in which they alleged as follows: On September 1, 1917, there was issued out of the city court of Dublin a fi. fa. in favor of Armour Fertilizer Works against Henry White. On January 8, 1918, the Armour Fertilizer Works transferred said fi. fa. to W. B. Coleman, administrator of B. T. Warren. On March 2, 1918, W. B. Coleman as such administrator transferred the fi. fa. to Jane Warren. On May 15, 1918, a transfer of the fi. fa., not entered thereon but on a separate paper, purported to have been made by Mrs. M. J. Warren, who is Jane Warren, by J. C. Warren, in words as follows: " Georgia, Laurens County. For value received I hereby transfer, set over, and assign to W. J. Colter all my rights, titles, and interest to the within fi. fa., together with the judgment on which same is based. Mrs. M. J. Warren, by J. C. Warren." This was a fraudulent transfer made by J. C. Warren, who assumed to act for the said Mrs. M. J. Warren without authority of law and without her consent, he having recently taken and carried away the fi. fa. from her possession without her knowledge or consent, and she was not aware that said transfer had been made until about December 31, 1921. W. J. Colter did not pay Mrs. M. J. Warren anything for the fi. fa., and he knew or was in possession of sufficient information to have easily discovered that J. C. Warren was making a fraudulent transfer. On December 31, 1921, J. I. Maddox, the sheriff of the city court of Dublin, levied the fi. fa. on certain described personal property. On January 4, 1922, the judge of the city court of Dublin, on petition presented by W. J. Colter, entered an order to sell said property; and in pursuance of said order the sheriff advertised the same for sale and proposed to sell it before the court-house door on January 6, 1922. On January 4, 1922, petitioners purchased the fi. fa. from said Mrs. M. J. Warren, and she transferred it to them in writing (a copy of which is set out) ; and in virtue of said transfer they are owners of and have the right to control the fi. fa. The defendant in fi. fa. is indebted to them on a mortgage of $1,000, and to secure the payment of said debt they have a mortgage upon the same property advertised for sale under said fi. fa. which is senior to the mortgage. They own and have the right to control the fi.

fa. The sheriff has notified them that he will sell said property unless he is legally restrained by some process of the court; he has no interest in the fi. fa., for the reason that the cost thereon has been paid. A sale of the property would force petitioners to foreclose their mortgage, and would be a sacrifice of the property on account of the conditions now prevailing, as the property would not bring more than ten per cent. of its real value. Petitioners are willing for White, the defendant in fi. fa., to retain said property for the purpose of making crops for the present year, he being the tenant on their land. The fi. fa. not having been paid since judgment by the defendant, there is no remedy other than in equity to restrain the sheriff from selling the property, as an affidavit of illegality would not and could not reach the issues involved, and to proceed would incur incalculable loss and multiplicity of law suits. Petitioners prayed that the alleged transfer signed by Mrs. Warren, by J. C. Warren as agent, to W. J. Colter be set aside and declared null and void, and that title and right to control the fi. fa. be established in petitioners by virtue of the transfer by Mrs. Warren to them; and that the sheriff be enjoined from selling the property as advertised or at any future time. The petition was duly verified by one of the plaintiffs.

W. J. Colter filed his sworn answer. He denied that the fi. fa. was fraudulently transferred to him without the authority or consent of Jane Warren; that he did not pay her anything for the fi. fa.; that he knew or was in possession of sufficient information to have discovered that J. C. Warren was making a fraudulent transfer; that a sale of the property would force petitioners to foreclose their mortgage, and would be a sacrifice of the property on account of prevailing conditions, etc.; or that petitioners were without adequate remedy at law. He alleged, that he purchased the execution in good faith from J. C. Warren, who was agent for his mother, Mrs. Jane Warren, after she had in person told defendant that her son had full and complete authority to transfer said execution in her name and behalf; that he paid therefor the full amount due thereon; that Mrs. Jane Warren, since the transfer of said fi. fa. to him, told him she had given J. C. Warren authority to make said transfer; that it had been nearly four years since said transfer was made to him; that Henry White, the defendant in fi. fa., is a negro who lived in a few hundred

yards of Jane Warren for nearly four years, on the place of Dr. Taylor, her son-in-law, and he actually did much work for her during that time, and if she did not know of the transfer of the fi. fa. she was guilty of the grossest kind of laches, and if she had made any effort to collect it she would have known; and defendant charged positively she did know and authorized and ratified said transfer; that W. B. Coleman, another son-in-law of Jane Warren, knew of the transfer to defendant, and it was not likely that her son and her two sons-in-law knew of said transfer and she herself never learned of said fact. On information and belief it was charged that petitioners never paid anything of value for said fi. fa. Defendant further set up that he was solvent and able to answer any judgment plaintiffs might obtain against him on account of the sale of the property. He demurred to the petition on the grounds: (1) that it set forth no cause of action; (2) that plaintiffs had a complete and adequate remedy at law; (3) specially because the transfer shows that it was made after the levy, and plaintiffs were put on notice of the previous transfer to defendant, the transfer to the plaintiffs being without recourse, and the petition shows that plaintiffs have complete right of action over and against Mrs. M. J. Warren; (4) specially because the law conclusively presumes that the property will bring its value, and depressed financial conditions are no ground for restraining the sale of property on execution, and the petition admits that petitioners have a remedy at law by foreclosing their mortgage; (5) it is not alleged that W. J. Colter is insolvent; (6) it is not alleged that plaintiffs will sustain any irreparable injury; (7) it is not alleged that Mrs. M. J. Warren is insolvent, and that Henry White is insolvent.

On the hearing the plaintiffs introduced an affidavit of Mrs. M. J. Warren, in which she deposed that she never at any time authorized or consented for J. C. Warren to transfer the fi. fa. to W. J. Colter or to any one; that it was transferred without her knowledge or consent; that she never knew of the transfer until it was reported to her that W. J. Colter as transferee had had fi. fa. levied on the property of Henry White, and as soon as she heard of it she repudiated it and declared, as she now declares, that W. J. Colter had never paid her anything on the fi. fa., and she had never authorized any person to transfer it to him; that

she at one time had said fi. fa. in her possession, and if J. C. Warren or any other person took it from her papers and had it transferred, such was without her knowledge, authority, or consent: that while it was in her possession it was not transferred to said W. J. Colter; that on January 4, 1922, she for value received transferred and assigned the fi. fa. to H. M. Livingston, W. M. Herndon, B. F. Harden, and J. T. Fountain, which transfer by her was made in good faith and was the only authorized transfer on said fi. fa. since same was transferred to her; and that said persons now own and have a right to control said fi. fa.

No evidence was introduced by the defendants.

*S. P. New,* for plaintiffs in error.

HINES, J. (After stating the foregoing facts.) The contest in this case is over the ownership of, and the right to control, the execution involved in this litigation. The plaintiffs claim title to this fi. fa. under mesne transfers from the original plaintiff in fi. fa. unto themselves. The defendant Colter claims title to this execution under like transfers. Both claim under Jane Warren, who was the holder and owner thereof under a previous transferee and owner of the fi. fa. Colter claims title to the execution under a transfer which was signed, " Mrs. M. J. Warren, by J. C. Warren " (Mrs. M. J. Warren being the same person as Jane Warren), which transfer antedates the transfer under which the plaintiffs claim. The transfer to the defendant is attacked by the plaintiffs on the ground that it was made by J. C. Warren without authority from Jane Warren and without her knowledge and consent. The trial judge was authorized to find that this was true, and that the plaintiffs were the owners of this fi. fa., and entitled to control the same. The plaintiffs did not wish the property sold which was levied upon under this fi. fa. and advertised for sale by the sheriff, because they had a junior mortgage on this property, which, due to the existing financial depression, would be sacrificed by the sale at the time, and because the defendant was their tenant, who could not make his crops during 1922 if he was deprived of his property by its sale under this execution.

1. Did the plaintiffs, assuming that they were the true owners of this execution, as the trial judge was authorized to find under the proof, make a case for injunction? The Civil Code, § 5490,

declares: "Equity, by a writ of injunction, may restrain proceedings in another or the same court, or a threatened or existing tort, or any other act of a private individual or corporation, which is illegal, or contrary to equity and good conscience, and for which no adequate remedy is provided at law." It would be illegal for the defendant Colter, if he was not the owner thereof, to take control of this fi. fa., have it levied upon the property of the defendant in fi. fa., and have the same sold contrary to the wishes and against the interest of the real owners. The holder and owner of a fi. fa. can proceed to make the money thereon by levy and sale, or he can desist from taking such action, either to indulge the debtor, or because he thinks it to his interest to delay such action for any reason.

While the defendant in execution could not enjoin the sale of his property, when levied upon to satisfy a judgment against him, on the ground that it would be sacrificed if sold under existing financial depression (*Robinson* v. *Thompson,* 30 *Ga.* 933), the plaintiffs, as owners thereof, could delay action if they were of the opinion that the property would bring more if the enforcement of the fi. fa. was delayed.

2. But the plaintiffs would not be entitled to the writ of injunction if they had an adequate remedy at law; and it is insisted that they had such remedy. In the first place, it is insisted that they have such remedy by a rule to distribute the money arising from the sale of the property by the sheriff. This would be true if the plaintiffs were seeking to make the money on their execution. *Rucker* v. *Tabor,* 133 *Ga.* 720 (66 S. E. 917); *Hardwick* v. *Cash,* 140 *Ga.* 608 (79 S. E. 532). But the plaintiffs did not wish to enforce their fi. fa. For reasons sufficient unto themselves, they did not want to enforce it. For selfish, if not for generous, purposes they did not wish the property of their judgment debtor sold. For this reason the remedy referred to in the above cases would not accomplish the aim of the plaintiffs.

The defendants next insist that the plaintiffs would have an adequate remedy at law against Jane Warren, who transferred this execution to them, for breach of her implied warranty of title, if it should turn out, in a rule to distribute funds arising from the sale of the property levied upon, that she had no title to the fi. fa. Civil Code (1910), § 5348. But if she had title to

the execution which she transferred to the plaintiffs, then the plaintiffs would have no recourse on her.

It may be said that the plaintiffs would have an action for damages against the defendants for any wrongful interference with the plaintiffs' right to this execution; and that for this reason they were not entitled to injunction. The fi. fa. being regular upon its face, and it being the duty of the sheriff to make the money thereon, the sheriff would not be a trespasser. *Hall* v. *Lyon,* 37 *Ga.* 636; *Harris* v. *Black,* 143 *Ga.* 497, 500 (85 S. E. 742). Have the plaintiffs an adequate remedy by an action for damages against the defendant Colter, for wrongful interference with the rights of the plaintiffs, if the latter are found to be the true owners of this fi. fa.? If the injury is irreparable in damages, or there exist other circumstances which, in the discretion of the court, render the interposition of this writ necessary, an injunction will be granted. Civil Code (1910), § 5493. An irreparable injury arises where the person injured "cannot be readily, adequately, and completely compensated" with money, or when the damages which may result from a tort cannot be measured by any certain pecuniary standard. *Camp* v. *Dixon,* 112 *Ga.* 872 (38 S. E. 71, 52 L. R. A. 755). Under the peculiar facts we think they make a case of irreparable injury, because the damages cannot be fixed by any certain money standard. The writ of injunction is required to fully protect the plaintiffs; and for this reason it cannot be urged that there is an adequate remedy at law. *Knight* v. *Knight,* 28 *Ga.* 165.

3. Counsel for the defendants assert that the record discloses that the plaintiffs have no title to this fi. fa., and that for this reason they are not entitled to an injunction. They base this contention upon the principle that it takes delivery of goods to make a sale perfect. Civil Code (1910), § 4125; *Fleming* v. *State,* 106 *Ga.* 359 (32 S. E. 338). This is the general rule in the sale of goods; but in such a case delivery need not be actual. Constructive delivery may be inferred from a variety of facts. Any plaintiff may bona fide transfer any judgment or execution to a third party. Civil Code (1910), § 5969. To pass the legal title by the plaintiff in execution, there must be an indorsement or assignment thereof in writing. *Anderson* v. *Baker,* 60 *Ga.* 599; *Jones* v. *Hightower,* 117 *Ga.* 749 (45 S. E. 60); *Screws* v.

*Anderson,* 124 *Ga.* 361 (52 S. E. 429).   Delivery is not essential, if the intention of the plaintiff in fi. fa. was to pass the title to the transferee.   But the transfer under which the plaintiffs claim was in writing, indorsed upon the fi. fa. itself; and from this fact possession of the fi. fa. by the plaintiff in fi. fa. and the delivery of the latter may be inferred.

4.   Finally the defendants urge that a chose in action arising in tort is not assignable (Civil Code (1910), § 3653; *Central R. &c. Co.* v. *B. & W. R. Co.,* 87 *Ga.* 386, 13 S. E. 520) ; and that the transaction by which the plaintiffs acquired this execution was champertous; on both of which grounds they contend the plaintiffs acquired no title thereto.   We fail to see the application of these doctrines to the case at bar.   Even a judgment based on tort is transferable, while the action for tort is not assignable. It is not champertous to take the transfer of an execution to which another lays claim.   This transfer was not acquired pendente lite.   If it had been, the plaintiffs would acquire title, but subject to be concluded by the result of the litigation.   *Swift* v. *Dederick,* 106 *Ga.* 35, 38 (31 S. E. 788).   In other words, they would have been concluded by any judgment rendered in the pending suit against the party to the suit under whom they claim.   The taking of the transfer of an execution after levy, and pending the advertising of the property levied upon for sale, is not champertous.

So we are of the opinion that the wise judge below did not abuse his discretion in granting a temporary injunction in this case.          *Judgment affirmed.   All the Justices concur.*