PITTS, administrator *v.* MAIER.

1. An instrument, in all respects in the form of a deed passing title, and executed for the purpose of securing the payment of a described debt is not, because containing the clause: "Reconveyance of said property to be made upon fulfillment of all the conditions of this instrument," properly to be treated as a mere mortgage. In so far as the decisions of this court in *Frost* v. *Allen*, 57 *Ga.* 326, and *Pirkle* v. *Mortgage Co.*, 99 *Ga.* 524, conflict with what is here laid down, they are, upon a review thereof, overruled.

2. The evidence would not have warranted a finding sustaining the plea of usury set up in this case, and there was no error in directing a verdict for the plaintiff.

Submitted February 19,—Decided April 24, 1902.

Complaint.    Before Judge Reid.    City court of Atlanta.    May 15, 1901.

Maier sued on a promissory note, and prayed that the judgment thereon be made a special lien on realty conveyed to him to secure the payment of the note.    The defendant demurred upon the ground that the plaintiff was not entitled to a special lien, and that the security was a mortgage and not a deed.    The demurrer was overruled.    The instrument in question is in the usual form of a warranty deed to land, but it further recites that it " is to be construed as a deed passing title, and not as a mortgage, and is intended to secure the payment " of the note, describing it.    There is a requirement that the debtor shall keep the buildings on the land conveyed both insured and in repair ; and a stipulation that time is of the essence of this contract, and that, in default of payment by the debtor of interest or taxes, or of keeping up insurance or repairs, the principal sum of the note shall become due and collectible at the option of the holder thereof ; and finally this clause: " Reconveyance of said property to be made upon fulfillment of all the conditions of this instrument."

There was a plea of usury, but the court directed a verdict for the plaintiff.    The evidence shows that Schmid applied to Liebman & Co. for a loan of $700, to pay off a prior loan and to build a house on the land offered as security.    Liebman procured Maier to lend the money, who advanced $425 at once, $20 about two weeks later, and $255 about six weeks after the date of the note and security deed.    Eight per cent. interest was charged, from the date of the note.    The money all passed through the hands of Liebman & Co., who retained $40 commission for procuring the loan.    They paid off the former loan, an attorney's fee of $10 for examining title, the expenses of recording the deed and of transferring an insurance policy, and the amounts due for labor and material in constructing the house, and then paid to Schmid the balance of $17.72.    Liebman testified : The building of the house was to be a part of the security for the loan.    I do not know who looked after the building of the house to see whether it was being built, and whether the

security was being furnished as agreed, or who passed on the question. Schmid would call on me for the money, and then we would get it from Maier. The contract between Maier and Schmid in reference to this loan was just that Mr. Maier was to make a loan to Mr. Schmid, and he was to furnish as security a piece of property. The house was to be put up on it. The money was to be paid for the building of the house as the house progressed. It is more than likely that there was an understanding that he should keep the money until it was paid out. On all loans negotiated where there is any building, it is always advanced as the work advances. As to whom the lender looked to see that he was protected in his loan, that is as to whether the building was going up, — well, of course he expected us to look after his interest some. He did not pay us anything for that service. The $40 was paid to us by Mr. Schmid for securing the loan; it was no part of the interest. I did not specially represent Maier in seeing that the house and security were fixed. I was the middleman in the matter. I was looking out for both. The reasonable and usual commission at that time for a loan of $700, just to procure a loan without other trouble, was about what we charged, about five per cent. In this loan and looking after the transaction for him I did not work specially for Maier. The money passed through my firm for the convenience and protection of all. Maier paid the full amount of $700 out. Where money loaned is to be applied to improvements, a part of it is always held back to be paid out as the building progresses. The party who acts for the payment of it out is not necessarily expected to render this service to the lender. I should think the lender himself would look for that. I would not know how to pass on the building. I would know whether a building had progressed far enough. I do not remember whether or not the house was completed when the last payment was made. I do not remember why it was not paid sooner. When we submitted the loan to Maier, it is more than likely we stated to him that this money was not to be turned over to Schmid until this building was completed, or as the building progressed.

Citations in the briefs. Deed or mortgage: Civil Code, §§ 2771 et seq., 5432; *Frost* v. *Allen*, 57 *Ga.* 326; *Carter* v. *Gunn*, 64/651; *Cully* v. *Bloomingdale*, 68/756; *Findley* v. *Deal*, 69/359; *Gladden* v. *Dozier*, 71/380; *Roland* v. *Coleman*, 76/652; *Brice* v.

*Lane,* 90/294; *Holliday* v. *Bank,* 92/675; *Pirkle* v. *Eq. M. Co.,* 99/524; *Ward* v. *Lord,* 100/407; *Burckhalter* v. *Bank,* 100/428; *Williamson* v. *Orient Co.,* 100/791; *Lubroline Co.* v. *Bank,* 104/376; *Jewell* v. *Walker,* 109/241; Porter *v.* White (N. C.), 38 S. E. 24; 9 Am. & Eng. Enc. L. (2d ed.) 169. Usury: *McLean* v. *Camak,* 97 *Ga.* 804; *Finney* v. *Eq. M. Co.,* 111/108; *Clarke* v. *Havard,* 111/242; *Bellerby* v. *Goodwyn,* 112/306; *Wilkins* v. *Gibson,* 113/32; Barr *v.* Church (N. J.), 10 Atl. 287. Direction of verdict: Civil Code, § 5331; *Manning* v. *Mitchell,* 73 *Ga.* 661; *Williams* v. *State,* 105/815; *Thornton* v. *Perry,* 105/837.

*Vasser Woolley* and *Henry Weber,* for plaintiff in error.
*David Eichberg,* contra.

LUMPKIN, P. J.   This was an action upon a promissory note the payment of which had been secured by an instrument which the, plaintiff contended was a deed passing title to land, but which the defendant insisted was a mere mortgage.   The case as presented here involves but two questions:   (1) what was the real nature of that instrument? and (2) was the note sued on infected with usury?

1. The document which the plaintiff claimed was a deed passing title was in all respects in the form of a deed, and should unquestionably be regarded as an instrument passing title unless the following clause therein gives to it the character of a mortgage: "Reconveyance of said property to be made upon fulfillment of all the conditions of this instrument."   It will thus be seen that the paper is one of substantially the same kind as that which this court had under consideration in the case of *Pirkle* v. *Equitable Mortgage Co.,* 99 *Ga.* 524.   The instrument now before us embraces a stipulation the plain intent and meaning of which is that the maker shall have a reconveyance of the land upon payment of the secured debt. The instrument under consideration in the *Pirkle* case contained a stipulation that, upon payment of the debt thereby secured, "then this deed shall be cancelled and surrendered in accordance with the act of the General Assembly of Georgia approved November 12th, 1889."   A stipulation for an actual reconveyance upon payment of the secured debt is, for all practical purposes and in essence, the same as a stipulation for surrender and cancellation which shall under a statute operate as a reconveyance.   The end to be accomplished is, in each instance, precisely the same, the only difference being as

to the method to be employed for accomplishing the desired result, viz. : that the title which has passed from the debtor to the creditor shall go back to the former.   Were we, therefore, to adhere to the ruling made in the *Pirkle* case, we would be constrained to hold that the paper on which we are now called upon to pass was a mere mortgage.   The decision therein is, however, under review, and we are fully satisfied of its unsoundness.   Indeed, we were much disposed to take this view soon after it was rendered.   See the comment made thereon by Mr. Justice Cobb in the case of *Williamson* v. *Insurance Co.*, 100 *Ga.* 794.   In passing the act of November 12, 1889 (Acts of 1889, p. 118), the General Assembly was expressly undertaking to deal with instruments which actually passed title to property for the purpose of securing the payment of debts. The subject-matter of the legislation was deeds, not mortgages; and the only object of the statute was to substitute for a formal reconveyance of title a mere surrender and cancellation of the instrument executed by the debtor, the cancellation to be entered of record by the clerk of the superior court " in the same manner that cancellations of mortgages are now entered."   See Civil Code, § 2774, which sets forth the provisions of this act.   The legislative purpose was not to provide for the cancellation of liens, but for the reconveyance of title.   We therefore made a grave mistake in holding that a stipulation in a security deed for the cancellation and surrender thereof in accordance with the statute just mentioned was the equivalent of such a defeasance clause as is usually inserted in a mortgage, and that, as a consequence, a deed manifestly designed to pass title became a mere mortgage.   This is our first opportunity to correct this mistake, and we do so by overruling the decision in the *Pirkle* case to the extent here indicated.   The decision rendered in the case of *Frost* v. *Allen*, 57 *Ga.* 326, is likewise under review; and in so far as it conflicts with what is now laid down, it also is overruled.

2. An examination of the brief of evidence makes it clear that the note sued upon was not, for any reason set forth in the defendant's answer, open to attack for usury.   The lender actually parted with $700, the principal sum named in the note.   Out of this sum the borrower paid fifty dollars, forty of which went to his agent for services in procuring the loan, while the remaining ten dollars were expended in procuring an attorney to investigate and

make an abstract of the title to the property offered as security. The lender did not, directly or indirectly, receive any portion of this fifty dollars, and had no concern in the disposition made thereof. This being so, the plea of usury was not made out, and the trial judge properly directed a verdict in favor of the plaintiff below. In the brief of counsel for the plaintiff in error it is contended that the note was infected with usury because all of the money was not loaned out at once, but that some of it was held back by the lender. We have been unable to find in the record the slightest indication that any such point was made in or passed upon by the trial court.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*